UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                :

SHARMAINE EDWARDS,                  :    10-CV-01047 (ARR) (LB)

               Plaintiff,       :    NOT FOR PRINT OR
                                :    ELECTRONIC
     -against-               :    PUBLICATION

CITY OF NEW YORK, POLICE OFFICER   :    OPINION & ORDER
CHRISTOPHER DEDE, Shield No. 7347, POLICE  :
OFFICER ADAM KASZOVITZ, Shield No. 43322, and :
POLICE OFFICER JOHN DOE #3      :

                                :
             Defendants.     X
-------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff, Sharmaine Edwards, brings this action pursuant to 42 U.S.C. § 1983 against

defendants City of New York and Police Officers Christopher Dede, Adam Kaszovitz, and John

Doe #3 of the New York City Police Department ("NYPD"). She seeks to hold defendants liable

for violations of her constitutional rights during an incident taking place in her home at 556

Gates Avenue in Brooklyn on December 2, 2008. Now before the court is defendants' motion

for summary judgment. For the reasons set forth below, defendants' motion for summary

judgment is granted in its entirety.

## I. BACKGROUND

The following facts are drawn primarily from plaintiff's deposition testimony. See

Deposition of Sharmaine Edwards, April 4, 2011 ("Pl. Dep."), annexed as Ex. C to the

Declaration of Alexandra Corsi, dated July 20, 2011 ("A. Corsi Decl."). Defendants have not

submitted affidavits in support of their motion.

Plaintiff was a 46 year-old African-American woman living with her then-husband Johnnie Lee Petway in a house located at 556 Gates Avenue, Brooklyn, New York. The house was protected by an external gate and a front door, both of which plaintiff and Petway regularly kept locked. Pl. Dep. at 27-30. On the evening of December 2, 2008, Edwards had fallen asleep in her basement while tending to her plants. Id. at 25-27. At some point during the night, she awoke to the sound of her dogs barking, and quickly became aware that several people not known to her—she does not recall how many—had entered her house. Id. at 26. Plaintiff heard one of the intruders say "I shoot the damn dogs," which she interpreted as threat to kill their dogs. Id. at 27. Now believing that the intruders were armed and fearing for her life, plaintiff hid out of view in the basement. Id. at 27-28. Plaintiff heard the intruders say "they would shoot whatever moves, they will shoot the dog," and could hear them "moving about." Id. at 30. At least one of the intruders was on the first floor of the house and one intruder came down the steps to the basement. Id. at 28.

Because she was hiding out of sight, however, Edwards never actually saw the intruders. Id. at 28. Edwards also did not overhear any of the intruders identify themselves as police officers, and, at the time, did not believe they were police officers. Id. at 29. The intruders remained for "three or four minutes," after which Edwards went back upstairs, where she discovered that the door to the house and the external gate had been left unlocked. Id. at 29-30. Outside, plaintiff also found her car unlocked, and her husband Petway missing.[1] Id. at 29. Edwards waited a few more minutes, then locked her house door, the external gate, and her car, and walked out onto the street to find her husband. Id. at 32-33. Sounding "crazy and irate," Edwards called 9-1-1 several times from a nearby pay phone, alerting the operator that her

---

[1] Plaintiff explained that she knew Petway had been home at some point that evening because groceries that he had purchased were left inside the house. Pl. Dep. at 30.

husband had been kidnapped. Id. at 31-33. Several hours later, Edward's husband Petway returned to the house and informed her that he had been arrested by police officers near their house. Id. at 36-37. At this point, Edwards told Petway about the "men in the house talking about shooting the dogs" and asked whether his arresting police officers had entered the house, to which Petway answered in the affirmative. [2] Id. at 37.

Months later, Edwards realized that a pair of boots, several hats, and brand new linens were missing from her house. Id. at 30-32. About a year later, Edwards was taunted by her neighbors and a "bunch of low life kids" who "curs[ed]" at her and "asked about [her] hats," suggesting to her that they had been inside her room and had stolen her hats. Id. at 37-38. Though plaintiff never actually saw or heard her neighbors enter her home on December 2, 2008, plaintiff believes her neighbors must have entered the house and stolen her property shortly after the police officers left the premises—and left the entrances unlocked—but before she walked upstairs and locked the front door and external gate. Id. at 39-41.

Plaintiff alleges that the intruders who entered her home, threatened her dogs, and left her home unlocked and unguarded, were defendant police officers Christopher Dede and Adam Kaszovitz and an unnamed police officer. Compl. at 3. Plaintiff alleges that defendants unlawfully entered and searched her home without a warrant in violation of the Fourth and Fourteenth Amendments, failed to investigate the incident, and violated the Equal Protection clause of the Fourteenth Amendment. Id. Plaintiff names as defendants the three officers alleged to have entered her home and the City of New York.

---

[2] Petway's description is based solely on plaintiff's deposition testimony. Plaintiff did not submit any affidavits or additional evidence beyond her pleadings and did not respond to defendants' statement pursuant to Local Rule 56.1.

## II. DISCUSSION

The court liberally construes plaintiff's pro se complaint to assert § 1983 claims for unlawfully entry, unlawful discrimination, and failure to investigate in deprivation of plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution, as well as analogous state law claims, and state tort claims of negligence. Defendants have moved for summary judgment on the bases that (1) plaintiff fails to allege or raise a genuine issue of material fact that defendants were personally involved in the unlawful search; (2) plaintiff's failure to investigate claim does not assert an independent ground for relief; (3) plaintiff fails to adequately allege an equal protection violation; and (4) plaintiff's potential state law claims should be dismissed for failing to comply with New York State notice of claim requirements, or, in the alternative, dismissed for lack of subject matter jurisdiction.

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other

firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156

(2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal

quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The

moving party carries the burden of proving that there is no genuine dispute respecting any

material fact and "may obtain summary judgment by showing that little or no evidence may be

found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d

1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary

judgment against it, the non-moving party "must come forward with specific facts showing that

there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In

reviewing the record before it, "the court is required resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought."

McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

**B.     Plaintiff's § 1983 Claims**

In order to make out a claim under 42 U.S.C. § 1983, the plaintiff must allege (1) that the

challenged conduct was "committed by a person acting under the color of state law," and (2) that

such conduct "deprived [the plaintiff] of rights, privileges or immunities secured by the

Constitution or the laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)

(quoting Pitchell v. Callan, 13 F. 3d 545, 547 (2d Cir. 1994)). Therefore, plaintiff must establish

the "personal involvement of defendants in alleged constitutional deprivations." Faird v. Ellen,

593, F.3d 233, 249 (2d Cir. 2010); see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)

("It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citations

and internal quotation marks omitted).

## 1. Unlawful Entry

Under the Fourth Amendment, individuals are protected against unreasonable searches and seizures. See U.S. Const. Amend. IV. In the case of a home, reasonableness requires that the search be conducted pursuant to a warrant or meet one of the few exceptions to the warrant requirement. See Kyllo v. United States, 533, U.S. 27, 31 (2001) ("[W]ith few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no."); Payton v. New York, 445 U.S. 573, 585 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."). Defendants do not argue that they entered plaintiff's home pursuant to a lawfully executed warrant or to a recognized exception to the warrant requirement. Instead, defendants argue that plaintiff's claim of unlawful entry should be dismissed because it is "conclusory and speculative" and has failed to allege or establish that defendant police officers were personally involved in the unlawful search of plaintiff's home. Because plaintiff conceded in her deposition that she has no personal knowledge that police officers entered her house, and has failed to offer any concrete facts or admissible evidence even suggesting that the intruders on December 2, 2008 were police officers, let alone these individual defendants, the court finds that there is no genuine dispute of material fact that defendants were personally involved in the alleged constitutional deprivation.[3]

---

[3] Plaintiff's complaint also names the City of New York as a defendant. The Supreme Court has permitted § 1983 claims against municipalities, but only if a plaintiff can show that a municipal policy or custom caused the alleged deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); Hudson v. New York City, 271 F.3d 62, 67 n. 6 (2d Cir. 2001) (affirming motion for summary judgment by municipality where plaintiff "has not adduced any evidence that any of the City's practices or policies contributed to, or caused, the allegedly unconstitutional search"). Plaintiff fails to allege or adduce evidence of the existence of any policy or custom pursuant to which plaintiff has been deprived of any constitutional rights. On this ground alone, defendant City of New York is therefore entitled to summary judgment on all § 1983 claims.

Plaintiff alleges that she was awakened by police officers, who entered her home unlawfully, threatened to shoot her dogs, and left her entrances unlocked. Defendants have put forth the plaintiff's own admission, however, that she hid out of sight during the entirety of the invasion, which lasted only a few minutes, and has no firsthand knowledge that police officers actually entered her house on December 2, 2008. Pl. Dep. at 28-30. In response, plaintiff submits no other factual bases, from affidavits or otherwise, to indicate that the intruders were these individual defendants, or police officers at all. Indeed, during the incident, and until hours later, plaintiff did not believe that the intruders were police officers. Id. at 28-29.

The only matters before the court raising any suggestion that the entrants into plaintiff's house on December 2, 2008 may have been police officers are based on generalized assertions lacking "concrete particulars" and inadmissible hearsay not based on personal knowledge. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984); see Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); see also Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (stating that assertions made only on information and belief would not be admissible at trial because testimony as to facts must generally be based on personal knowledge); cf. Sarno v. Douglass Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (stating that a hearsay assertion is not competent material for a Rule 56 affidavit). When asked in her deposition why plaintiff believed that the intruders were police officers despite never seeing them and never hearing them identify themselves as such, plaintiff stated the basis of her belief but admitted no personal knowledge: "Mr. Petway, he told me that he was arrested. And I told him that I called 911 and reported [him] kidnapped. And I asked him if any

7

of them entered the house, because I heard men in the house talking about shooting the dogs; and

he said, yes." Petway's inadmissible hearsay statement alone cannot raise a genuine material

issue of fact that the defendants actually entered 556 Gates Avenue on December 2, 2008.

The only other matter in the record alleging a potential link between police officers and

plaintiff's house is based on plaintiff's claims in her complaint that Petway was arrested

December 2, 2008 outside of 556 Gates Avenue, and that the only possible way to enter their

house was by use of plaintiff's and Petway's keys. Compl. at 3. These assertions, however, do

not reasonably give rise to the inference that the police officers, after arresting Petway, seized his

keys and used them to open the external gate and the door to the house. While the court must

view all of the evidence presented "in the light most favorable to the non-moving party and draw

all reasonable inferences in its favor," Labounty, 137 F.3d at 75, such inferences must still be

"reasonable." Absent any specific evidence in the record that the arresting police officers

actually seized or used Petway's keys to unlawfully enter plaintiff's home, such an inference

would be based "purely on conjecture or surmise." Savino v. City of New York, 331 F.3d 63, 71

(2d Cir. 2003). Plaintiff fails to offer any evidence beyond the conclusory allegations set forth in

her complaint that entry into her home requires the use of their keys. This bald assertion cannot

not rebut defendant's showing that there is "little or no evidence in support" of plaintiff's theory

of the case. Gallo, 22 F.3d at 1223.

Plaintiff has therefore failed to offer any evidence based on her personal knowledge, or

any other admissible evidence, tending to show that defendants even entered, let alone

unlawfully entered, her house on December 2, 2008. Accordingly, plaintiff cannot show the

existence of a genuine issue of material fact concerning whether the challenged entry was

committed by the individual defendants or "by a person acting under the color of state law." 28

U.S.C. § 1983; see Cornejo, 592 F.3d at 127. Because no rational factfinder could find that the defendants entered plaintiff's home on December 2, 2008, summary judgment is appropriate.

### 2. Equal Protection

Plaintiff's equal protection claim also must fail. Even if plaintiff had a colorable argument that somebody violated her rights by entering her home and selectively harassing her, and that the perpetrators were motivated by a racial or otherwise prohibited class-based animus, plaintiff cannot show that these defendants were "personally involved" in any alleged constitutional deprivations. Farrell, 449 F.3d at 484. As noted above, plaintiff has failed to adduce evidence that "any person acting under the color of the state law" entered into her home on December 2, 2008.[4]

### 3. Failure to Investigate

Plaintiff's complaint explicitly alleges "failure to investigate" as an independent cause of action. The court can construe plaintiff's claim in three ways; however, each is without merit.

First, plaintiff might be seeking relief on the grounds that the defendants failed to investigate plaintiff's unlawful entry claim against the defendant police officers. Defendants argue that failure to investigate claims provide no independent grounds for relief but must be considered under the rubric of the "traditional remedies of false arrest and imprisonment and malicious prosecution." See Campbell v. Guiliani, 99 CV 2603 (JG), 2000 U.S. Dist. LEXIS 1617, at *25 (E.D.N.Y. Feb. 16, 2000). Even if the court could recognize a "failure to investigate claim," however, the claim must fail because plaintiff has not adduced any evidence

---

[4] In any event, the record is also devoid of any facts suggesting the defendants treated plaintiff differently than any other similarly situated person. See Leclair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980) (holding that in order to make out claim of selective adverse treatment, plaintiff must allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person"). Plaintiff has failed to produce any evidence beyond the bald allegation in her complaint that defendants violated her right to "Equal Protection of law." Compl. at 2.

suggesting that the defendants actually entered into plaintiff's home. Where plaintiff has failed raise a genuine issue of material fact that there even was a constitutional deprivation, failure to investigate the alleged constitutional deprivation cannot give rise to liability.

The court could also construe plaintiff's claim to seek relief on the grounds that defendants failed to investigate the alleged burglary carried out by her neighbors after leaving plaintiff's house unlocked. Plaintiff, however, cannot establish a constitutional violation where the alleged violation is the state's failure to provide affirmative aid. Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 ("[W]e conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). To the extent plaintiff seeks relief based on her assertion of an affirmative right for the government to investigate the alleged burglary committee by her neighbors, plaintiff fails to raise a claim upon which relief may be granted. [5]

Finally, plaintiff's complaint might be suggesting that defendants failed to investigate the alleged robbery or unlawful entry on the basis of her race or some other class-based animus. The state "may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." Id. at 197 n.3 (citing Yick Wo v. Hopkins, 118 U.S. 356 (1886)). Plaintiff, however, has failed to allege any specific facts beyond the conclusory allegations in her complaint, and the record is devoid of any evidence, of any racial or class-based animus leading to defendants' failure to investigate. See Leclair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980). Thus, the court finds summary judgment appropriate on any of these theories of recovery.

---

[5] Moreover, plaintiff testified in her deposition that she never reported her robbery to the police: "Q. Did you ever report the robbery to the police. A. Why? They are the ones that caused it. Q. Is that a No? A. No." Pl. Dep. at 47. It is unclear how defendants could have selectively failed to investigate a robbery of which they were never provided any notice.

## C.    Plaintiff's State Law Claims

New York General Municipal Law § 50-e and § 50-i requires an individual to file a notice of claim with the New York City Comptroller before commencing any action in tort against a municipal entity or its employees acting within the scope of their employment "within ninety days after the claim arises." Failure to comply with this condition precedent is grounds for dismissing New York state-law claims in federal court. Cantave v. New York City Police Officers, No. 09-CV-2226 (CBA)(LB), 2011 WL 1239895, at *12 (E.D.N.Y. Mar. 28, 2011). Defendants argue that plaintiff's state-law claims, to the extent any are alleged, must be dismissed because plaintiff did not plead that she had served a notice of claim. Defendants, however, ignore plaintiff's notice of claim completed on December 3, 2008 and attached to her complaint. See Compl. at 6-7. Plaintiff therefore appears to have complied with the New York General Municipal Law filing procedure.

In any event, the court declines to exercise supplemental jurisdiction over plaintiff's potential state law claims. Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting that a district court may, in its discretion, dismiss a plaintiff's state law claims where "considerations of judicial economy, convenience, and fairness to litigants" require); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") In the absence of any viable federal law claim raised by plaintiff, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted.

Plaintiff's claims are dismissed in their entirety.  The clerk of court is directed to enter judgment

accordingly.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated:        October 18, 2011
              Brooklyn, New York

SERVICE LIST

> Pro Se Plaintiff
> Sharmaine Edwards
> 556 Gates Avenue
> Brooklyn, NY 11221